**Roger E. ABERLE, Plaintiff and Appellee,**

v.

**R. Daniel RINGHAUSEN, Defendant and Appellant,**

**and**

**S.D. Express, Inc., Armond A. Schopp, Fireman's Fund Insurance Company and Robbyn Blaha, Defendants.**

**No. 17812.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 3, 1992.

Decided Dec. 16, 1992.

Charles B. Kornmann of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for plaintiff and appellee.

Dennis Maloney of Maloney, Kolker, Fritz Hogan & Johnson, Aberdeen, for defendant and appellant.

MILLER, Chief Justice.

R. Daniel Ringhausen (Ringhausen) appeals a trial court order sanctioning his noncompliance with a discovery order by striking his answer to a complaint and directing the entry of a default judgment against him. We reverse and remand.

## FACTS

On April 15, 1991, Roger Aberle (Aberle) mailed Ringhausen a summons and complaint raising several causes of action against Ringhausen and three other defendants for an injury sustained while Aberle was an employee of two corporations allegedly operated by Ringhausen. Ringhausen failed to sign an admission of service and, on May 23, the summons and complaint was personally served on Ringhausen in Bloomington, Minnesota.

On June 26, 1991, Ringhausen filed a special appearance and a motion to dismiss Aberle's complaint for lack of personal and subject matter jurisdiction. Ringhausen's motion was denied in an order entered August 7. The order incorporated the trial court's memorandum opinion which noted: 1) Ringhausen had recently served as president of the two corporations which allegedly employed Aberle at the time of his injury; 2) Ringhausen sold the assets of those businesses to S.D. Express, Inc., a South Dakota corporation and a named defendant in Aberle's complaint; 3) the sale agreement between Ringhausen and S.D. Express specifically stated that Ringhausen was to be employed to oversee the interstate trucking business of S.D. Express. The August 7 order also directed Ringhausen to "forthwith answer" Aberle's complaint.[1]

On August 8, Aberle served a set of twenty-eight interrogatories and a request for the production of thirteen items on Ringhausen, S.D. Express and Armond Schopp, another defendant in the action. On September 7, Ringhausen's thirty day time limit to respond to Aberle's interrogatories and request to produce expired without response or objection by Ringhausen[2].

---

1. In fact, by the time of entry of the order, Ringhausen had served his answer but the answer was not filed until March 6, 1992.

2. SDCL 15–6–33(a) provides in pertinent part that, "[t]he party on whom the interrogatories have been served shall serve a copy of the answers, and objections, if any, within thirty days after the service of the interrogatories ..." SDCL 15–6–34(b) similarly provides that, "[t]he party upon whom the request [to produce] is served shall serve a written response within thirty days after the service of the request ..."

On September 12, Aberle served a motion to amend his complaint to add Ringhausen's sister, the president of S.D. Express, as a party defendant. Aberle's motion also requested a trial court order, "[t]o require all defendants ... to produce for copying and inspection all items specified in the Request to Produce served on August 8, 1991, as to which there has been no response."

Aberle's motions were heard on September 25. On October 15, the trial court entered its order granting Aberle's motion to amend and further providing that, "[a]ll defendants ... shall produce for copying and inspection all items specified in the request to produce served on August 8, 1991." Notice of entry of the order was served by mail on October 15.

Because of Ringhausen's continued failure to provide discovery, Aberle served a motion on November 14, "[f]or sanctions against defendants Ringhausen, South Dakota Express and Schopp as permitted by SDCL 15-6-37(b), including an order requiring such parties to pay all reasonable expenses, including attorneys' fees, caused by the failures of such defendants and an order striking the answers and rendering a default judgment against such parties." Aberle's motion advised the court that on November 5, his counsel had informed defendant's local counsel that continued failure to obey the order of the court and answer interrogatories would result in a motion to strike their answers and for entry of a default judgment.

No response was made to Aberle's motion and the matter was heard by the trial court on November 22. Ringhausen's local counsel appeared at the hearing with an affidavit from the Minneapolis attorney for S.D. Express averring that he had filed a petition for bankruptcy on behalf of S.D. Express on November 15, 1991, thus staying Aberle's state court action against the corporation. At the hearing, Ringhausen also filed a response to Aberle's request for production of documents which recited that, "none of the documents requested are in the possession of R. DANIEL RINGHAUSEN. Any such documents are in the possession or under the control of S.D. EXPRESS, INC." Ringhausen also filed answers to Aberle's interrogatories. His answers to twelve of the twenty-eight interrogatories referred Aberle to the corporate records of S.D. Express or the two corporations whose assets had been transferred to S.D. Express.

On December 5, 1991, the trial court entered its order providing in pertinent part:

1. The defendants R. Daniel Ringhausen and Armond A. Schopp failed and refused to timely answer interrogatories and to comply in good faith and in a timely manner with the Order of this court entered on October 11, 1991, as to which such parties received notice on October 15, 1991, and sanctions should therefore be awarded, jointly and severally, against R. Daniel Ringhausen and Armond A. Schopp, in the amount of $300 to be paid forthwith to the attorney for plaintiff and no later than ten days from the service of notice of entry of this Order, the court finding that sanctions are proper under SDCL 15-6-37(b).

2. Defendant Ringhausen has made no good faith attempt to answer the interrogatories or to produce documents and is attempting to frustrate the purposes of discovery and the right of the plaintiff to receive information and documents in a timely fashion. Mr. Ringhausen has failed to comply with the Order of this court and even the answers to interrogatories and the answers to the request for production of documents as finally made on November 21, 1991, are intentionally incomplete, evasive and in bad faith. The answer of R. Daniel Ringhausen should be, and the same is, hereby stricken and a judgment by default will be rendered against him based upon an evidentiary hearing to be scheduled by plaintiff with notice to the attorneys for R. Daniel Ringhausen. The purpose of the evidentiary hearing will be to determine the amount of damages to be awarded plaintiff against R. Daniel Ringhausen.

Notice of entry of the order was served by mail on December 5, 1991. Ringhausen appeals.

## ISSUE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN STRIKING RINGHAUSEN'S ANSWER AND DIRECTING ENTRY OF A DEFAULT JUDGMENT AGAINST HIM AS A SANCTION FOR VIOLATION OF ITS DISCOVERY ORDER?

The parties agree that the standards for reviewing the trial court's sanction in this case were established in *Chittenden & Eastman Co. v. Smith*, 286 N.W.2d 314, 316 (S.D.1979):

> SDCL 15–6–37 is adopted from Fed. R.Civ.P. 37. This rule is flexible and allows a trial judge broad discretion with regard to sanctions imposed thereunder for failure to comply with discovery orders. Although the trial judge's latitude in penalizing failure to comply is broad, it is not limitless. Orders imposing sanctions are generally appealable, but in any event are reviewable on appeal from a final judgment, and the appellate court will reverse if it considers that the trial court abused its discretion. (citations omitted).

In *Chittenden*, the plaintiff commenced an action on a note against the defendant as its guarantor. The plaintiff served a set of interrogatories on the defendant. After approximately four months passed, the plaintiff moved for an order striking defendant's answer for failure to answer the interrogatories. The hearing on the motion was delayed, for reasons unclear in the decision, for two years. After the hearing, the trial court issued an order giving the defendant twelve days to answer the interrogatories indicating that if defendant did not answer the interrogatories in the time specified, plaintiff could introduce such motions as deemed necessary. The trial court also imposed costs of $250.00. Defendant mailed his answers to plaintiff's attorney two days after the deadline had passed. The day after the answers were mailed, plaintiff served and filed a motion to strike defendant's answer for failure to comply

with the discovery order. Without any hearing on the motion, the trial court issued an order striking defendant's answer. A hearing was held on plaintiff's subsequent motion for a default judgment which judgment was ultimately entered for plaintiff.

The defendant in *Chittenden* appealed to this Court. Applying the previously quoted standard of review, we noted "[t]he mere failure to comply with an order to answer brings the discretionary sanctions of Rule 37 into play, but the reason for the failure to disclose is an important consideration in determining what sanction to impose." *Chittenden*, 286 N.W.2d at 316. We went on to caution:

> Entry of a default judgment, however, is one of the most severe of all the sanctions available and is only to be resorted to when the "failure to comply has been due to ... willfulness, bad faith, or any fault of petitioner." These drastic sanctions under Rule 37 are not authorized, however, when the failure to comply is the result of inability rather than willfulness or bad faith. Although dismissal and judgment by default are provided for by Rule 37(b) (SDCL 15–6–37(b)), these drastic remedies should be applied only in extreme circumstances, and should not be liberally implemented in order to eliminate the actual trial of cases.
>
> Rule 37(b) is designed to empower the court to compel production of evidence by the imposition of reasonable sanctions, and not as punishment for general misbehavior. "Dismissal and entry of a default judgment should be the rare judicial act." Where an alternative, less drastic sanction would be just as effective, the court should utilize it first.

*Id.* (citations omitted).

Applying the above considerations, we reversed Chittenden's default judgment and remanded the matter to the trial court with instructions to reinstate the defendant's answer. However, we did leave intact the $250.00 assessment of costs and attorney's fees. In reaching this conclusion, we observed that the record did not

indicate whether consideration was given to imposition of less severe sanctions or whether defendant's failure to comply was willful or in bad faith. We also noted plaintiff's failure to actively pursue his cause of action. Finally, we observed:

> Defendant did attempt to answer the interrogatories, but was unable to fully complete them due to inaccessibility of the records. His failure to comply was the result of his inability, not a willful or bad faith abuse of the discovery process. Inability to comply should not preclude him from his day in court. On remand, the trial court may consider the imposition of less extreme sanctions set forth in SDCL 15–6–37(b)(2)(A)–(E).

*Chittenden,* 286 N.W.2d at 317. We most recently reaffirmed *Chittenden* in *Magbuhat v. Kovarik,* 382 N.W.2d 43 (S.D.1986). There we reversed a trial court order limiting the scope and use of depositions taken by the plaintiffs as a sanction for their failure to supplement their answers to earlier defense interrogatories.

Although various actions taken by Ringhausen in the present case are disturbing [3], *Chittenden* compels the conclusion that the trial court abused its discretion in striking Ringhausen's answer and ordering the entry of a default judgment against him. First, it is difficult to say that any delay in Aberle's pursuit of his cause of action was occasioned by Ringhausen's nonresponse to the discovery order. Summary judgment was not even granted to one of the codefendants in this case until February 1992, over two months after entry of the order granting a default judgment against Ringhausen.

Second, the trial court's discovery order merely provided in general terms that all defendants should produce for copying and inspection all of the items specified in the "request to produce served on August 8, 1991." Defendant was not required to respond to Aberle's interrogatories. No specific sanction was mentioned for failure to comply with the discovery order. Nor was

defendant given a date certain for compliance. "Where no specific date is ordered for compliance with a discovery order, dismissal is an inappropriate sanction. Instead, the trial court should fix a deadline for compliance and provide for dismissal only if compliance does not occur." *Bio-Line, Inc. v. Wilfley,* 365 N.W.2d 338, 340–41 (Minn.Ct.App.1985) (citations omitted).

Third, Ringhausen *did* tender responses to the request to produce and the interrogatories on the day set for hearing on Aberle's motion for sanctions. Because the trial court never set any date certain for compliance with its discovery order, it is difficult to characterize Ringhausen's response as tardy. We note that in *Chittenden,* the defendant mailed his answers two days *after* the date the trial court set for compliance. Nevertheless, despite that tardy response, we reversed the default judgment against that defendant.

Fourth, although the trial court characterized Ringhausen's response to the request to produce and answers to the interrogatories as, "intentionally incomplete, evasive and in bad faith," much the same could have been said in *Chittenden.* In *Chittenden,* we described the defendant's answers to interrogatories as, "not all complete and many were answered with this notation: 'Defendant is without specific information and knowledge to answer the question.'" *Chittenden,* 286 N.W.2d at 315. This response is indistinguishable from Ringhausen's numerous references to the documents in the possession or under the control of S.D. Express.

Finally, as in *Chittenden,* the record in the present case does not indicate that the trial court gave consideration to imposition of less severe sanctions. We hold therefore, that the trial court abused its discretion when it sanctioned Ringhausen by striking his answer and granting Aberle a default judgment against him. The default judgment is reversed and the matter remanded to the trial court with instructions to reinstate Ringhausen's answer, and, if

---

**3.** We are particularly disturbed by Ringhausen's flagrant disregard of the trial court's direct or-

der to respond to Aberle's request to produce.

appropriate to impose a less severe sanction on Ringhausen for his noncompliance with the discovery order.

WUEST, SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

Our decision is postured entirely on procedure. For benefit of the Bar and Bench, these additional facets are presented:

1. Had the default judgment withstood the test of law, a hearing on damages to be awarded Aberle against Ringhausen was vital and was set below by the trial court. Due to this appeal, it never took place.

2. Aberle was an over-the-road truck driver. He suffered a severe injury to his back while unloading cargo in South Dakota on July 16, 1990.

3. Orchestrated by Ringhausen, a contract was entered into by two Minnesota corporations and one South Dakota corporation. Ringhausen was president and signed on behalf of both Minnesota corporations.

4. Since his injury date, Aberle has not worked; he has been virtually penniless since his injury and his wife and children have gained sustenance through food stamps.

5. Ringhausen's sister, at his askance, was established as president of South Dakota Express, Inc.

6. At the bottom of this litigation, Aberle finds himself *without* worker's compensation, a possible fraudulent transfer of the two Minnesota corporations into the South Dakota corporation, and Ringhausen claiming South Dakota has no personal jurisdiction over him. Furthermore, the two Minnesota corporations filed for bankruptcy.

To say the least, it is a civil quagmire within a legal jungle. Boggy ground complicated by reluctancy to produce.

Notwithstanding the technical aspect above, this case involves real live people.

Today, in the law practice we see onerous interrogatories, produced by computers, often reflected in hundreds of interrogatories with subparagraphs and corresponding questions, dazzling the overworked attorney into a state of bewilderment and frustration. An attorney is turned into a detective to ferret out information to impale his own case. It can be costly effort and paralyze a single practitioner. Sometimes the attorney has the information, sometimes not. But like the tromp, tromp, tromp of the troops on a forced march, the discovery rules, SDCL 15–6–33(a) and SDCL 15–6–34(b) proceed ever onward. These rules express counsel "... shall serve a written response ..." and "shall serve ... answers and objections within thirty days after the service of the request." Here, however, there were only 28 interrogatories and a request to produce 13 pieces of evidence. At first blush, these certainly seem reasonable in nature. Notwithstanding, Ringhausen was reticent and resistant to produce.

Interrogatories are often abused in the practice of law. I fully appreciate that objections may be made to same. This requires a great deal of valuable time and expense for the recipient of immaterial interrogatories. Certain courts have refused to establish sanctions against an opponent who has not answered the interrogatories. One of the first cases I could find was *Hodge v. Alabama Water Co.*, 205 Ala. 472, 88 So. 585 (1921). There, the unanswered interrogatories shed no light on any material issue in the case and the trial court, it was held, had not erred in refusing to enter judgment against the defendant for failure to answer. Accord: *Anderson v. Stanwood*, 178 Or. 306, 167 P.2d 315 (1946). It has been ruled, in California, *see Laguna Auto Body v. Farmers Ins. Exchange*, 231 Cal.App.3d 481, 282 Cal.Rptr. 530 (4th Dist.1991) that in providing punishment for actions described [in discovery rules] the Legislature has imposed a duty on parties to be forthright and honest in their attempts to reach the merits of their action. It appears that the courts are unwilling to impose sanctions on parties where the information, which one party

compels the other to discover or find, is not discoverable information. This was so held in *In re Marriage of Economou*, 224 Cal. App.3d 1466, 274 Cal.Rptr. 473 (3rd Dist. 1990). It was likewise held in *Economou* that discovery sanctions cannot be imposed to punish the offending party or to bestow an "unwarranted windfall" on the adversary. The *Economou* court cited to *Deyo v. Kilbourne*, 84 Cal.App.3d 771, 149 Cal. Rptr. 499 (2nd Dist.1978). In *Deyo*, it was held that the materiality of questions propounded to a particular claim or a defense should be considered as a factor in assessing the propriety of entering a dismissal or a default judgment for failure to answer. In other words, a good trial judge should look at what is being asked and its materiality before a default judgment is entered. Simply because, says this writer, a party does not answer the interrogatories, should not entitle a propounder to an automatic default judgment. An opposing parties' right to demand information should be subject to a number of restrictions. As an example, a party could legitimately invoke the privilege against self-incrimination. Another restriction is simply that the information requested is not information which is available. You simply cannot disclose something of which you have not. Another restriction is that the requested information is so extensive that it cannot be assembled within the time allowed. There are many horror stories in the State of South Dakota concerning interrogatories which are told, oft over, by practicing lawyers and trial judges in this state. Interrogatories can subvert justice, rather than serve it.

In sum, interrogatories can be a great avenue towards bringing a case to settlement but they can also be abused to a point where a small law office can be brought to its knees by the use of computers. A trial judge should be wary of these 15 to 25 member law firms who exert unbearable pressure upon a one or two man law firm, asking the one or two man law firm to be a detective or a magician in answering questions which do not bear upon the guts of the lawsuit.

Judge Dobberpuhl is a seasoned trial judge and would have no part of Ringhausen's civil disobedience. As the majority points out, there were lesser sanctions (other than striking the answer and defaulting Ringhausen on liability). It is very difficult for me to posit that Judge Dobberpuhl has clearly abused his discretion, especially in light of our holdings in *Matter of Estate of Donahue*, 464 N.W.2d 393 (S.D.1990) and *Davis v. Kressly*, 78 S.D. 637, 107 N.W.2d 5 (1961): A claimed abuse of discretion is measured by the "objective reasonableness standard," i.e., not if an appellate court would have made an original like ruling, but rather if a judicial mind, in view of the law and the circumstances of a particular case, could reasonably have reached such a conclusion. A turning point in my mind was the failure to set a specific date for compliance. However, Ringhausen, faced with sanctions, just one day before a hearing on sanctions did tender *some* response to (a) interrogatories and (b) motion to produce. Therebefore, he had produced nothing. It is generally recognized that a defendant should "... not be defaulted for failing to answer interrogatories or other discovery questions within the time allowed by law if answers [have] been filed at some point in the proceedings, even though the response [is] tardy." John E. Theuman, Annotation, *Judgment in Favor of Plaintiff in State Court Action for Defendant's Failure to Obey Request or Order to Answer Interrogatories or Other Discovery Questions*, 30 A.L.R.4th 9, 51 (1984). I notice that Judge Dobberpuhl ordered Ringhausen to pay $300.00 in terms on December 3, 1991. As of January, 1992, Ringhausen had not paid the $300.00. In the horse world, a horse is "ringy" if he won't behave.