2003 SD 84

**Bruce E. DUDLEY, Claimant and Appellant,**

v.

**James HUIZENGA, d/b/a Huizenga Trucking, Employer and Appellee,**

and

**Wausau Insurance Companies, Insurer and Appellee.**

No. 22487.

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 2003.

Decided July 16, 2003.

Brian L. Radke, Sioux Falls, South Dakota, Attorney for claimant and appellant.

Eric C. Schulte of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for appellees.

KONENKAMP, Justice.

[¶ 1.] In this workers' compensation proceeding, the claimant's attorney missed a stipulated deadline for disclosing expert witnesses. He provided the disclosure eight weeks late. The Department of Labor granted the employer's motion to strike the claimant's experts, and, since

the claimant had no case without expert evidence, the Department also granted summary judgment for the employer. Because our workers' compensation laws and administrative rules are remedial in nature and should be liberally construed to achieve their purposes, we conclude that it was an abuse of discretion not to impose a lesser sanction before striking the claimant's expert witnesses. We reverse and remand for further proceedings.

### Background

[¶ 2.] On October 23, 1989, Bruce E. Dudley sustained a work-related injury in the course of his employment. As he drove a semi-truck on a highway near San Antonio, Texas, someone dropped a rock from a bridge when he passed underneath. The rock broke through the windshield and struck him on the left side of his face, fracturing several teeth and cutting his face. He brought a workers' compensation claim against his employer, Huizinga Trucking, and its insurance carrier, Wausau Insurance Companies. He sought permanent partial disability benefits for loss of use of his left eye and for post-traumatic headaches, nerve damage, and other head injuries. In an amended petition dated June 26, 1991, Dudley alleged permanent and total disability under SDCL 62–4–6(23) for loss of use of both eyes.

[¶ 3.] On March 12, 1992, the Department ruled that "[Dudley] is entitled to reimbursement for all dental bills associated with treatment of [his] teeth injured on October 23, 1989, and that [he] is entitled to permanent and total disability benefits for life under the provisions of SDCL 62–4–6(23) and SDCL 62–4–7." The employer appealed. The circuit court reversed the permanent disability award and remanded the claim to the Department with orders to develop a specific test "to determine the extent of [Dudley's] 'loss of use of his eyes' and the extent of [his] disability...." On remand, the Department denied Dudley's petition in an order dated November 12, 1992, ruling in part that Dudley "failed to establish permanent total disability under the new test adopted by the Department."

[¶ 4.] Between April 1996 and June 2000, no activity occurred in Dudley's file. His former attorney withdrew in April 1996, and a new attorney, Brian L. Radke, began representing him sometime thereafter. Counsel for the employer asked Radke to submit a settlement demand in April 1997, but he did not respond. The employer moved to dismiss for failure to prosecute the case. The Department sent a letter directly to Dudley asking for his response, and Radke submitted materials opposing the motion. In an order dated August 29, 2000, the Department granted the motion, ruling that "all claims which remained open following the November 12, 1992 order, including, but not limited to, [Dudley's] request for *Cozine* benefits and for 'certain of claimant's dental treatment,' are hereby dismissed with prejudice." As to Dudley's claim for permanent and total disability, the Department ruled that "in order to reopen the issue of permanent total disability, (odd-lot doctrine) based on a change in medical condition, in accordance with SDCL 62–7–33, [Dudley] must prove said medical condition changed at some time following the November 12, 1992 order."

[¶ 5.] In January 2001, Dudley petitioned to reopen under SDCL 62–7–33, alleging that he had experienced a substantial change in his condition because of his "need to see a psychologist on a weekly basis for seven years due to this condition." The parties agreed to a joint preliminary report, and the Department entered a prehearing order requiring both sides to abide by various scheduling and discovery deadlines. Concerning expert witnesses, the order stated:

(d) Any expert reports that have not already been exchanged will be exchanged as soon as possible. Claimant will submit his reports and opinions by May 15, 2001, and Employer/Insurer by July 15, 2001.

[¶ 6.] Although Dudley produced medical records on May 14, 2001, he failed to submit any expert reports or opinions by May 15, 2001. Thus, there was no expert opinion evidence of record to show that Dudley had experienced a substantial change in his psychological condition. Dudley now contends that there was no specific provision for the exchange of a list of expert witnesses in the prehearing order. Nonetheless, Dudley did disclose his vocational expert, Rick Ostrander, by May 15, 2001, though he did not provide Ostrander's report as required by the prehearing order.

[¶ 7.] On June 5, 2001, the employer's attorney contacted Dudley's counsel to schedule an independent medical exam for June 9, 2001. The employer's counsel explained that if the date was not feasible, the employer would need an extension of time to comply with the expert disclosure deadline imposed by the Department because the next available appointment would not be until sometime in August 2001. In response, Dudley's attorney sent a letter the next day, stating that he had been unable to contact Dudley. But the letter further advised that Dudley would "strongly oppose any amendment to the scheduling order." As a result, the employer moved for summary judgment.

[¶ 8.] On July 11, 2001, Dudley filed an amended list of expert witnesses, naming Douglas Anderson, Dr. Alan Knutson, Gene Hagedorn, Dudley's chiropractor, and Ostrander. In response, the employer moved to strike the claimant's designated experts on the ground that their names were not timely submitted. Dudley re-

quested a hearing to address the matter. Without a hearing, the Department granted both the motion to strike and the motion for summary judgment. Then the case again came to circuit court.

[¶ 9.] While Dudley appealed the Department's summary judgment of September 2001, the employer submitted a notice of review challenging the wording of the Department's order of a year earlier that dismissed Dudley's prior petition for failure to prosecute. The circuit court affirmed the summary judgment, but reversed the Department's prior order to the extent that it permitted the reopening of a permanent total disability claim based on a change in condition after the November 12, 1992 order. The court ruled that the issues did not achieve finality until the Department's August 29, 2000 order of dismissal.

[¶ 10.] Dudley now appeals on the following questions: (1) "Whether the Department of Labor erred when it determined there was a deadline for naming expert witnesses." (2) "Whether the Department of Labor erred when it imposed the sanction of not allowing Dudley to present the medical records of his treating practitioners." (3) "Whether the circuit court erred when it reversed the Department of Labor's ruling that allowed Dudley to reopen the issue of permanent total disability (odd-lot doctrine) if he proved he experienced a change in medical condition some time after the Department's November 12, 1992 order." We deem Issue 1 to be without merit and therefore decline to address it.

**A. Dismissal as Sanction for Untimely Disclosure**

[¶ 11.] Dudley's attorney failed to comply with a prehearing order mandating the timely disclosure of his expert witnesses and their opinions. As a sanction, the ALJ struck the witnesses and granted

summary judgment. *See* SDCL 15–6–37(b)(2)(B). This was the most drastic action available. *See* SDCL 15–6–37(b)(2)(C). Discovery rules are designed "to compel the production of evidence and to promote, rather than stifle, the truth finding process." *Magbuhat v. Kovarik,* 382 N.W.2d 43, 45 (S.D.1986) (citing *Chittenden & Eastman Co. v. Smith,* 286 N.W.2d 314, 316 (S.D.1979)). The purpose of workers' compensation is to provide for employees who have lost their ability to earn because of an employment-related accident, casualty, or disease. *Rawls v. Coleman–Frizzell, Inc.,* 2002 SD 130, ¶ 19, 653 N.W.2d 247, 252 (citing *Sopko v. C & R Transfer Co., Inc.,* 1998 SD 8, ¶ 8, 575 N.W.2d 225, 229).

[¶ 12.] The Department's administrative rules contain two provisions on sanctions for a party's noncompliance in discovery. The first rule, ARSD 47:03:01:16, provides:

> If a party or the party's attorney fails to obey a scheduling or prehearing order, if no appearance is made on behalf of the party at a scheduling or prehearing conference, or if a party or the party's attorney fails to participate in good faith, the Division of Labor and Management, upon motion or its own initiative, may make such orders with regard thereto that it considers just.

The second rule, ARSD 47:03:01:05.02, provides:

> If any party fails to comply with the provisions of this chapter, the Division of Labor and Management may impose sanctions upon such party pursuant to SDCL 15–6–37(b). However, attorney fees may be imposed only for a violation of a discovery order.*

---

* SDCL 15–6–37(b) entitled "Failure to comply with order" provides:

(1) Sanctions by court in circuit where deposition is taken. If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the circuit in which the deposition is being taken, the failure may be considered a contempt of that court.

(2) Sanctions by court in which action is pending. If a party or an officer, director, or managing agent of a party or a person designated under subdivision 15–6–30(b)(6) or § 15–6–31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under § 15–6–37(a) or 15–6–35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under § 15–6–35(a) requiring him to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that he is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

As with statutes, administrative rules are construed together to make them harmonious and workable. *Nelson v. State Bd. of Dentistry*, 464 N.W.2d 621, 624 (S.D.1991). We review an ALJ's decision to invoke sanctions under an abuse of discretion standard. *Chittenden & Eastman Co.*, 286 N.W.2d at 316. Under SDCL 15–6–37(b), administrative sanctions must be "just." *See* FRCP 37(b); *see also Shelton v. American Motors Corp.*, 805 F.2d 1323, 1329–30 (8thCir.1986) (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106–07, 72 L.Ed.2d 492 (1982)).

■■■ [¶ 13.] At the outset, we believe that the Department has no more leeway in disposing of cases and in exercising discretion than circuit courts have. *See* SDCL 1–26–18 and 19. *See also Johnson v. Ford New Holland, Inc.*, 254 Neb. 182, 575 N.W.2d 392, 396 (1998). Considering the remedial nature of workers' compensation, sanctions for discovery violations in administrative proceedings should have at least the same restraints as comparable sanctions for discovery violations in civil courts. An ALJ should operate within the spirit of those cases applying § 37(b), when determining the appropriate sanction for a party violating a prehearing order. *See Chittenden & Eastman Co.*, 286 N.W.2d at 316. After all, an ALJ's latitude in penalizing failures to comply may be broad, but it is not limitless.

■■■ [¶ 14.] Courts are reluctant to uphold dismissals merely to sanction errant attorneys. *Buck v. United States Dep't of Agric. Farmers Home Admin.*, 960 F.2d 603, 608 (6th Cir.1992). A dismissal should only be resorted to when the "failure to comply has been due to . . . willfulness, bad faith, or any fault of petitioner." *Chittenden & Eastman Co.*, 286 N.W.2d at 316 (citations omitted). When considering a discovery violation,

the severity of the sanction must be tempered with a consideration of the equities. *Id.* at 316–17. Less drastic alternatives should usually be employed before imposing the severest sanction. Judges must balance the policy of giving parties their "day in court against the policies of preventing undue delay, avoiding court congestion, and preserving respect for court procedures." *Onkka v. Herman*, 1997 WL 1037762 (D.Neb.1997) (quoting *Tyler v. Iowa State Trooper Badge No. 297*, 158 F.R.D. 632, 637 (N.D.Iowa 1994)). In deciding the appropriate sanction to be imposed, the court should consider the purposes to be served by the sanction. *Resolution Trust Corp. v. Williams*, 162 F.R.D. 654, 660 (D.Kan.1995). An ALJ has a duty to keep things moving, but moving toward a fair result on the merits, if possible. As this Court has noted, the clearing of calendars and the expeditious dispatch of cases are secondary concerns. *Chicago & N.W. Ry. Co. v. Bradbury*, 80 S.D. 610, 612, 129 N.W.2d 540, 542 (1964).

■■■ [¶ 15.] Factors to consider when imposing sanctions for discovery violations include: (1) whether the party's failure to cooperate in discovery was attributable to willfulness, bad faith, or the fault of the client; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether there is a need for deterrence in a particular sort of noncompliance; (4) whether the party was warned that failure to cooperate could lead to dismissal; and (5) whether less drastic sanctions can be imposed before dismissal. *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989); *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir.1988).

■■■ [¶ 16.] By failing to timely disclose experts and their reports, Dudley's

counsel clearly engaged in sanctionable conduct. In considering the equities, we apply the above factors. First, although Dudley's attorney failed to comply with the prehearing order on expert opinions, the attorney did make an appearance on Dudley's behalf at the prehearing conference and it appears that the attorney participated in good faith. He also submitted medical records in partial compliance with the order. Second, the employer would not be prejudiced by Dudley's late disclosure of expert witnesses if the ALJ extended the employer's disclosure deadline. As to the third, fourth and fifth factors, the striking of the claimant's experts and the dismissal of the case was a harsh sanction for a late discovery disclosure: the record does not reflect whether the ALJ warned Dudley that failure to cooperate could result in dismissal or whether the ALJ considered less drastic sanctions. In light of these considerations, excluding expert evidence resulting in the dismissal of the case was an abuse of discretion. Commensurate with the purposes of workers' compensation, a less severe sanction that permits the case to be heard on the merits would better serve justice.

[¶ 17.] In summary, the ALJ had authority to impose sanctions for failure to timely disclose; however, the sanction imposed here, which denied Dudley a hearing on the merits, was too harsh and constituted an abuse of discretion. Accordingly, the case is remanded to the Department with instructions to consider some lesser sanction, to allow Dudley's expert evidence, and to take such other action, as it deems proper, consistent with this opinion.

### B. Employer's Notice of Review in Circuit Court

[¶ 18.] In the circuit court, the employer filed a notice of review of the Department's August 29, 2000 order of dismissal with prejudice for failure to prosecute. This was not an interlocutory order but a final one. Neither side appealed that order within the time limit in SDCL 1–26–31. Under SDCL 1–26–36.1, an appellee's right to obtain review of a "final decision, ruling or action" pertains to any decision on which the time for appeal has not elapsed. *Cf.* SDCL 1–26–30.2. If we interpreted the statute otherwise, appellees could challenge on appeal any final rulings no matter how long ago they were entered.

[¶ 19.] Although Dudley did not raise the question of jurisdiction in response to the employer's notice of review, we have a duty to determine whether the trial court had jurisdiction over a matter as a condition precedent to its right to decide the issues before it. *Long v. Knight Constr. Co.*, Inc., 262 N.W.2d 207 (S.D.1978); *Sioux City Boat Club v. Mulhall,* 79 S.D. 668, 117 N.W.2d 92 (1962). Appellate jurisdiction can never be presumed but must affirmatively appear from the record. Thus, even when the parties fail to challenge jurisdiction, this Court will, *sua sponte,* determine whether the circuit court had jurisdiction. *Estate of Putnam,* 254 N.W.2d 460 (S.D.1977); *Shryock v. Mitchell Concrete Products, Inc.,* 87 S.D. 566, 212 N.W.2d 498 (1973); *Tri–State Milling Co. v. Board of County Commrs. for Pennington County,* 75 S.D. 466, 68 N.W.2d 104 (1955). Here, the circuit court did not have jurisdiction to consider the employer's notice of review issue because the order the employer challenged was a final order and the time for appeal had expired.

[¶ 20.] Reversed and remanded.

[¶ 21.] MEIERHENRY, Justice, concurs.

[¶ 22.] GILBERTSON, Chief Justice, and SABERS, Justice, concur specially.

[¶ 23.] ZINTER, Justice, deeming himself disqualified, did not participate.

SABERS, Justice (concurring specially).

[¶ 24.] I concur specially because 1) this case is distinguishable from our recent precedent in *JENCO v. United Fire*, 2003 SD 79, 666 N.W.2d 763 (2003), and *Storm v. Durr*, 2003 SD 6, 657 N.W.2d 34 (2003); and 2) the applicable statutes in this case are to be construed liberally in favor of the claimant.

[¶ 25.] *Storm* involved an unjustified violation of a court order which allowed the case to languish for fourteen months. *Storm*, 2003 SD 6 at ¶ 19, 657 N.W.2d at 39. In *Storm*, the plaintiffs were warned that failure to abide by the order would result in dismissal but chose to disregard the order. *Storm*, 2003 SD 6 at ¶ 3, 657 N.W.2d at 34. This Court found that Storm's disregard of the order was willful.

[¶ 26.] In *JENCO*, the plaintiff allowed its case to languish for 30 months and did not attempt to comply with the court order until the defendant moved to dismiss. *JENCO*, 2003 SD 79 at ¶ 12, 666 N.W.2d at 766. Further, the court found that Jenco's delay resulted in prejudice to the opposing party. *JENCO*, 2003, SD 79 at ¶ 21, 666 N.W.2d at 768. In the instant case, none of these factors are present. Claimant's attorney made a good faith effort in a complicated case to move forward with the case and employer has shown no prejudice.

[¶ 27.] Even more important, unlike *JENCO* and *Storm*, this suit involves a claimant seeking relief under the worker's compensation statutes. These statutes must be liberally construed in favor of the claimant. *Wilcox v. City of Winner*, 446 N.W.2d 772, 775 (S.D.1989) (additional citations omitted). With no showing of bad faith or willful disregard of the discovery order, the sanctions imposed by the ALJ were too severe.

[¶ 28.]GILBERTSON, Chief Justice, joins this special writing.